FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION 2019 JUL 24  PM 3: 12

**UNITED STATES OF AMERICA**

   **Plaintiff,**

**v.**                                          Case No. 6:19-cv-1366-ORL-37LRH

**$392,805 IN U.S. CURRENCY**

   **Defendant.**

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States of

America brings this complaint and alleges upon information and belief as follows:

### NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit to the United States of America,

pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G(2), $392,805 (Defendant Funds) on

the grounds that the funds represent property which constitutes or is derived from

proceeds traceable to a violation of 18 U.S.C. § 1343, or a conspiracy to commit such

an offense.   The Defendant Funds are thus property constituting or derived from

proceeds traceable to a violation of an offense constituting "specified unlawful

activity" (as defined in section 1956(c)(7) of Title 18) and subject to civil forfeiture to

the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

1

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.      This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.      Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1395(b), because the Defendant Funds were found and seized in this district.

5.      Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1).   The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6.      The Defendant Funds consist of $392,805, which were voluntarily surrendered by Dr. Robert W. Kurrle to the to the Federal Bureau of Investigation on or about July 18, 2019, pursuant to the terms of Kurrle's plea agreement with the United States.   As discussed more fully below, on or about May 28, 2019, Kurrle

2

pled guilty to three counts of making materially false, fictitious, or fraudulent

statements or representations related to a scheme to defraud the Federal Aviation

Administration, in violation of 18 U.S.C. § 1001.   *See United States v. Robert Kurrle*,

Case No. 6:19-cr-127-ORL-31-LRH, Docs. 3 & 11.

7.     As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court

must issue a warrant to arrest the Defendant Funds if they are in the government's

possession, custody, or control.

## BASIS FOR FORFEITURE

8.     Pursuant to 18 U.S.C. § 1343, it is a crime to engage in wire fraud.

That statute makes it unlawful to "devise[] . . . any scheme or artifice to defraud," or

to "obtain[] money . . . by means of false or fraudulent pretenses, representations, or

promises," if the person "transmits or causes to be transmitted by means of wire . . .

communication in interstate or foreign commerce any writings . . . for the purpose of

executing such scheme or artifice."   *Id.*

9.     The Defendant Funds are proceeds of a wire fraud scheme that

operated in violation of 18 U.S.C. § 1343, as set forth further herein.   Because the

Defendant Funds represent proceeds of a violation of 18 U.S.C. § 1343, they are

subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes the

United States to civilly forfeit any property that constitutes or is derived from

proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§

3

1956(c)(7).   "Specified unlawful activity," is defined in 18 U.S.C. § 1956(c)(7) to

include offenses listed in 18 U.S.C. § 1961(1), which includes conducting wire fraud

in violation of 18 U.S.C. § 1343.

10.     As required by Rule G(2)(f), the facts set forth herein support a

reasonable belief that the government will be able to meet its burden of proof at trial.

Specifically, they support a reasonable belief that the government will be able to

show by a preponderance of the evidence that the Defendant Funds are proceeds of

wire fraud.

11.     Kurrle admitted the following facts in his plea agreement, attached

hereto as Exhibit A, which support the forfeiture of the Defendant Funds:

## FACTS

12.     Dr. Robert W. Kurrle is a medical doctor who was authorized by the

Federal Aviation Administration ("FAA") to perform medical examinations on

individuals who were seeking an Airman Medical Certificate.   Between on or about

January 1, 2017 through on or about February 28, 2019, in Port Orange, Florida,

Kurrle failed to administer the medical examinations according to FAA guidelines

and issued medical certificates to individuals who did not pass material portions of

the medical examination.   As part of this process, Kurrle electronically transmitted

to the FAA materially false statements and representations, and the FAA relied upon

those false statements and representations in assessing whether the subject individuals could lawfully operate aircraft.

13.    Pursuant to an investigation by the Department of Transportation's Office of Inspector General and the Federal Bureau of Investigation, undercover agents underwent medical examinations administered by Kurrle on August 28, 2018, November 20, 2018, and November 27, 2018.

14.    During all three examinations, Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- Kurrle did not measure each applicant's height.

- Kurrle did not perform an ophthalmoscopic examination, or test ocular motility or pupillary reflexes.

- Kurrle did not examine the abdomen.

- Kurrle did not examine the extremities or spine.

- Kurrle did not ask about body marks, scars, or tattoos.

- Kurrle did not perform a neurologic, lymphatic, or psychiatric screening.

- Kurrle did not perform near or intermediate vision or field of vision testing.   He also did not test both eyes together.

15.    During the August 28, 2018, examination, Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- Kurrle transmitted to the FAA an examination that included near and intermediate vision, but did not perform those tests.

- Kurrle informed the applicant that he was at risk for sleep apnea but failed to ask a detailed history or mark the correct radial for sleep apnea risk.

- The applicant's EKG revealed a right bundle branch block (a conduction abnormality).   According to FAA regulations, a medical certificate should not be issued to any class if the applicant has a new onset bundle branch block.   A certificate can only be issued once all structural abnormalities and coronary artery disease has been ruled out.   They require a full cardiovascular evaluation and a maximal exercise stress test to the FAA's specifications.   Kurrle asked the applicant if he really needed a first-class examination and stated that if the applicant took a second-class examination, he would not have to report the issue to the FAA.   Kurrle nevertheless issued the first-class certificate and did not note the right bundle branch block.

16.   During the November 20, 2018, examination, Dr. Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- The examination encompassed only weight, distant vision, color vision, cardiac, and an EKG.   Kurrle did not conduct any other portion of the examination.

- The applicant's blood pressure was "up" at 145/88.   Kurrle transmitted the blood pressure to the FAA as 140/88.

- Distant vision testing with both the Keystone telebinocular device and a wall chart demonstrated that the applicant could not read at a 20/20 vision level in either eye.   Kurrle informed the applicant, "If you tell me you are going to do it, I'll put you must wear corrective lenses on your certificate."   However, according

6

to FAA guidelines, applicants who do not meet the visual standards should be referred to a specialist for evaluation, and Kurrle should not have issued the certificate without verification that the airman's vision had been corrected to 20/20.

- The EKG showed three pre-ventricular contractions ("PVCs"). The FAA directs that a maximal exercise stress test be conducted when two or more PVCs are on a standard EKG. Issuance of a first-class certificate should occur only if there is no evidence of structural, functional, or coronary heart disease, and the PVCs resolve with exercise. Kurrle told the applicant, "If I do a second class [certificate], I won't send the EKG in," which is contrary to the requirement to document all findings. Kurrle nevertheless issued the first-class certificate.

17. During the November 27, 2018, examination, Dr. Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- The examination encompassed weight, distant vision, phorias, color vision, ears, mouth, cardiac, pulmonary, and an EKG. It did not include eyes, near vision, abdomen, extremities, or any other required testing.

- The applicant's distant vision was a "barely pass" according to Kurrle, and Kurrle told him that he needed an eye examination.

- The FAA directs that applicants must correctly identify all six presented numbers from Keystone telebinoccular devices to pass color vision. Kurrle tested the applicant on only three, and the applicant incorrectly identified one of the numbers. Kurrle should have either deferred the examination or issued it with a "NOT VALID FOR NIGHT FLYING OR BY COLOR SIGNAL CONTROL" restriction. Instead, Kurrle issued a clear certificate.

7

18.    From January 1, 2017, through February 28, 2019, Kurrle performed approximately 3,814 medical examinations, and approximately 1,101 of those examinations required EKGs.   Kurrle charged $120 per examination and $60 per EKG.   Therefore, Kurrle's revenue from the period was approximately $523,740. During a subsequent interview with agents on or about February 28, 2019, Kurrle admitted that approximately 75% of his examinations were not completed in accordance with FAA guidelines.   Therefore, approximately $392,805.00 was improperly obtained.

19.    As a result of this criminal activity, on July 1, 2019, Kurrle pled guilty to three counts of making materially false, fictitious, or fraudulent statements or representations to the FAA, in violation of 18 U.S.C. § 1001.   As part of his plea agreement, Kurrle agreed to forfeit the $392,805.00 he obtained from his fraud in a subsequently filed civil forfeiture action.   *See* attachment A at 4-5.

20.    Based on the foregoing, probable cause exists to believe that the Defendant Funds are subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C) as proceeds of wire fraud in violation of 18 U.S.C.§ 1343.

## CONCLUSION

21.    As required by Supplemental Rule G(2)(f), the facts set forth herein

support a reasonable belief that the government will be able to meet its burden of

proof at trial.

Dated: July 24, 2019                Respectfully Submitted,

                                    MARIA CHAPA LOPEZ
                                    United States Attorney

                          By:       _____

                                    NICOLE M. ANDREJKO
                                    Assistant United States Attorney
                                    Florida Bar No. 0820601
                                    400 W. Washington Street, Suite 3100
                                    Orlando, Florida 32801
                                    (407) 648-7500 – telephone
                                    (407) 648-7643 – facsimile
                                    E-mail: nicole.andrejko@usdoj.gov

## VERIFICATION

I, Michael T. Bishop, hereby verify and declare under penalty of perjury, that I am a Special Agent with the U.S. Department of Transportation's Office of Inspector General, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the U.S. Department of Transportation and the Federal Bureau of Investigation, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of July, 2019.

_____
MICHAEL T. BISHOP
Special Agent
U.S. Department of Transportation –
Office of Inspector General

FILED

AF Approval *blw*                                  Chief Approval *RBH*

2019 MAY 28  PM 3: 35

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                                    CASE NO. 6:19-cr-127-ORL-31-LRH

ROBERT W. KURRLE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, and the defendant, ROBERT W. KURRLE, and the attorney for the

defendant, Michael Salnick, mutually agree as follows:

**A.**    **Particularized Terms**

    1.    **Counts Pleading To**

        The defendant shall enter a plea of guilty to Counts One through

Three of the Information. Each of Counts One through Three charges the

defendant with making a materially false, fictitious, or fraudulent statement or

representation, in violation of 18 U.S.C. § 1001.

    2.    **Maximum Penalties**

        Counts One through Three each carry a maximum sentence of 5

years of imprisonment; a maximum fine $250,000, or twice the gross gain

caused by the offense, or twice the gross loss caused by the offense, whichever

Defendant's Initials   LK

is greater; a maximum term of supervised release of 3 years, and a special
assessment of $100. With respect to certain offenses, the Court shall order the
defendant to make restitution to any victim of the offense, and with respect to
other offenses, the Court may order the defendant to make restitution to any
victim of the offenses, or to the community, as set forth below.

3.      **Elements of the Offenses**

The defendant acknowledges understanding the nature and
elements of the offenses with which defendant has been charged and to which
defendant is pleading guilty. The elements of Counts One through Three are:

<u>First</u>:          The Defendant made the statement, as charged;

<u>Second</u>:          The statement was false;

<u>Third</u>:          The falsity concerned a material matter;

<u>Fourth</u>:          The Defendant acted willfully, knowing that the
                statement was false; and

<u>Fifth</u>:          The false statement was made or used for a matter
                within the jurisdiction of a department or agency of
                the United States.

4.      **Indictment Waiver**

Defendant will waive the right to be charged by way of
indictment before a federal grand jury.

Defendant's Initials ʔUC                    2

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses that are known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials TLK                    3

7.    Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.    Forfeiture of Assets

There is no criminal forfeiture in this case.  The defendant, however, agrees that, within 30 days of his change of plea hearing, he will present to the United States Attorney's Office an official bank check, or cashier's check from an attorney trust account, in the amount of $392,805.00 made payable to the United States Marshals Service.  He further agrees that, pursuant to 18 U.S.C. § 981(a)(1)(C),  the $392,805.00 is subject to forfeiture to the United States as proceeds of wire fraud, which the defendant admits he obtained as a result of his fraudulent scheme.  The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the $392,805.00.

Defendant's Initials _TUC_               4

The defendant further expressly consents to the civil forfeiture of the $392,805.00 and waives his right to notice of the commencement of any civil forfeiture proceeding against the funds. To the extent necessary, he also agrees to sign any additional documents necessary for the United States to complete a civil forfeiture of the funds, including but not limited to a consent to forfeiture.

Forfeiture of the $392,805.00 shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns

Defendant's Initials ___TLC___              5

until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**     **Standard Terms and Conditions**

    1.     **Restitution, Special Assessment and Fine**

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. In accordance with 18 U.S.C. § 3663(a)(3), the defendant specifically agrees to pay $48,818.45 in restitution to the FAA, who incurred a pecuniary loss in that amount as described below. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials _TUC_                 6

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials ⎯⎯⎯                    7

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United

Defendant's Initials  ᴫᵁ⳽                    8

States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States

Defendant's Initials ____TLIC____          9

Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to

Defendant's Initials ___        10

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera,</u> in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges

Defendant's Initials _RK_                 11

defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _TLC_                12

11. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials ⟨ ⟩            13

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __14__ day of May, 2019.

MARIA CHAPA LOPEZ
United States Attorney

ROBERT W. KURRLE
Defendant

Embry J. Kidd
Assistant United States Attorney

Michael Salnick
Attorney for Defendant

Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____        14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:19-cr-

ROBERT W. KURRLE

## PERSONALIZATION OF ELEMENTS

**First:**    Did you make the statement, as charged?

**Second:**    Was the statement false?

**Third:**    Did the falsity concern a material matter?

**Fourth:**    Did you act willfully, knowing that the
statement was false?

**Fifth:**    Was the false statement was made or used for a
matter within the jurisdiction of a department or
agency of the United States?

Defendant's Initials ⟨initials⟩          15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO. 6:19-cr-

ROBERT W. KURRLE

FACTUAL BASIS

Dr. Robert W. Kurrle is a medical doctor who was authorized by the

Federal Aviation Administration ("FAA") to perform medical examinations

on individuals who were seeking an Airman Medical Certificate. Beginning on

an unknown date, but not later than on or about January 1, 2017, and

continuing until on or about February 28, 2019, Kurrle failed to administer the

examinations according to FAA guidelines and issued medical certificates to

individuals who did not pass material portions of the medical examination.

As part of this process, Kurrle electronically transmitted to the FAA materially

false statements and representations, and the FAA relied upon those false

statements and representations in assessing whether the subject individuals

could lawfully operate aircraft.

Pursuant to an investigation by the Department of Transportation's

Office of Inspector General and the Federal Bureau of Investigation,

Defendant's Initials ⎱⎰⎲                    16

undercover agents underwent medical examinations administered by Kurrle on August 28, 2018, November 20, 2018, and November 27, 2018.

During all three examinations, Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- Kurrle did not measure each applicant's height.

- Kurrle did not perform an ophthalmoscopic examination, or test ocular motility or pupillary reflexes.

- Kurrle did not examine the abdomen.

- Kurrle did not examine the extremities or spine.

- Kurrle did not ask about body marks, scars, or tattoos.

- Kurrle did not perform a neurologic, lymphatic, or psychiatric screening.

- Kurrle did not perform near or intermediate vision or field of vision testing. He also did not test both eyes together.

During the August 28, 2018, examination, Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- Kurrle transmitted to the FAA an examination that included near and intermediate vision, but did not perform those tests.

Defendant's Initials 　Ϝ𝘒𝘊 　　　17

- Kurrle informed the applicant that he was at risk for sleep apnea but failed to ask a detailed history or mark the correct radial for sleep apnea risk.

- The applicant's EKG revealed a right bundle branch block (a conduction abnormality). According to FAA regulations, a medical certificate should not be issued to any class if the applicant has a new onset bundle branch block. A certificate can only be issued once all structural abnormalities and coronary artery disease has been ruled out. They require a full cardiovascular evaluation and a maximal exercise stress test to the FAA's specifications. Kurrle asked the applicant if he really needed a first-class examination and stated that if the applicant took a second-class examination, he would not have to report the issue to the FAA. Kurrle nevertheless issued the first-class certificate and did not note the right bundle branch block.

During the November 20, 2018, examination, Dr. Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- The examination encompassed only weight, distant vision, color vision, cardiac, and an EKG. Kurrle did not conduct any other portion of the examination.

Defendant's Initials ꓘしし.          18

- The applicant's blood pressure was "up" at 145/88. Kurrle transmitted the blood pressure to the FAA as 140/88.

- Distant vision testing with both the Keystone telebinocular device and a wall chart demonstrated that the applicant could not read at a 20/20 vision level in either eye. Kurrle informed the applicant, "If you tell me you are going to do it, I'll put you must wear corrective lenses on your certificate." However, according to FAA guidelines, applicants who do not meet the visual standards should be referred to a specialist for evaluation, and Kurrle should not have issued the certificate without verification that the airman's vision had been corrected to 20/20.

- The EKG showed three pre-ventricular contractions ("PVCs"). The FAA directs that a maximal exercise stress test be conducted when two or more PVCs are on a standard EKG. Issuance of a first-class certificate should occur only if there is no evidence of structural, functional, or coronary heart disease, and the PVCs resolve with exercise. Kurrle told the applicant, "If I do a second class [certificate], I won't send the EKG in," which is contrary to the requirement to document all findings. Kurrle nevertheless issued the first-class certificate.

Defendant's Initials TLC                    19

During the November 27, 2018, examination, Dr. Kurrle failed to perform the following examination requirements, among other things, each of which is material to the FAA:

- The examination encompassed weight, distant vision, phorias, color vision, ears, mouth, cardiac, pulmonary, and an EKG. It did not include eyes, near vision, abdomen, extremities, or any other required testing.

- The applicant's distant vision was a "barely pass" according to Kurrle, and Kurrle told him that he needed an eye examination.

- The FAA directs that applicants must correctly identify all six presented numbers from Keystone telebinoccular devices to pass color vision. Kurrle tested the applicant on only three, and the applicant incorrectly identified one of the numbers. Kurrle should have either deferred the examination or issued it with a "NOT VALID FOR NIGHT FLYING OR BY COLOR SIGNAL CONTROL" restriction. Instead, Kurrle issued a clear certificate.

From January 1, 2017, through February 28, 2019, Kurrle performed approximately 3,814 medical examinations, and approximately 1,101 of those examinations required EKGs. Kurrle charged $120 per examination and $60 per EKG. Therefore, Kurrle's revenue from the period was approximately

Defendant's Initials ⎯⎯⎯⎯        20

$523,740.  During a subsequent interview with agents on or about February 28, 2019, Kurrle admitted that approximately 75% of his examinations were not completed in accordance with FAA guidelines.  Therefore, approximately $392,805.00 was improperly obtained, and Kurrle agrees to civilly forfeit that amount.

Additionally, the FAA suffered a pecuniary loss as a result of the defendant's actions.  Specifically, the FAA has expended approximately $48,818.45 in connection with retesting airmen who were improperly issued medical certificates by Kurrle.  Therefore, in accordance with 18 U.S.C. § 3663(a)(3), Kurrle agrees to pay $48,818.45 in restitution to the FAA.

Defendant's Initials _____        21

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | $392,805 in United States Currency |

| **(b)** County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant Orange |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander    Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability    ☐ 368 Asbestos Personal | | | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine    Injury Product | | **SOCIAL SECURITY** | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product    Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability    **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | Exchange |
| ☐ 190 Other Contract | Product Liability    ☐ 380 Other Personal | Relations | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | ☐ 740 Railway Labor Act | | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury    ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -    Product Liability | Leave Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations    ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment    **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other    ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 981(a)(1)(C)

Brief description of cause:
proceeds traceable to wire fraud offenses in violation 18 U.S.C. § 1343

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  7/24/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____